IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| U.S. SPECIALTY INSURANCE COMPANY, Plaintiff and Counterclaim-Defendant | : : : : : | No. 1:17-cv-00885 |
| v. | : : : | (Judge Kane) |
| TOM GORMAN, et al., Defendants and Counterclaim-Plaintiffs | : : : : | |

## MEMORANDUM

Before the Court are the motion for summary judgment filed by Defendants and Counterclaim-Plaintiffs Jeffrey P. Barnett and Thomas L. Cline ("Claimants") (Doc. No. 21), and the motion for summary judgment filed by Plaintiff and Counterclaim-Defendant U.S. Specialty Insurance Company ("USSIC") (Doc. No. 22). For the reasons that follow, the Court will grant Claimants' motion for summary judgment (Doc. No. 21), and deny USSIC's motion for summary judgment (Doc. No. 22).

I.  BACKGROUND

  A.  Factual Background[1]

USSIC issued an insurance policy (the "Policy") (Doc. No. 21-1), to Tom Gorman ("Gorman"), which was identified by policy number UA00163585-06 and applicable to a policy period of October 31, 2014 through October 31, 2015 (id. at 5, Doc. No. 21-1 ¶ 1). Pursuant to the Policy, USSIC provided insurance coverage to Gorman, who at all relevant times conducted

---

[1] Unless otherwise indicated, the following relevant facts of record are derived from Claimants' statement of undisputed material facts. (Doc. No. 21-1.) The Court deems the facts recited herein to be undisputed in all material respects. Additionally, the Court has directly cited relevant evidence of record in certain instances.

business as Tipton Aircraft Services, in connection with Gorman's aviation business activities on the premises of the Tipton Airport in Odenton, Maryland. (Doc. No. 21-2 at 5.) Specifically, Gorman's business included repairing and servicing airplanes, and leased an aviation shop on the property of the Tipton Airport for purposes of conducting such business. (Doc. No. 21-1 ¶ 2.) The Policy includes differing levels of coverage that correspond to the type of damage that would warrant such coverage. In pertinent part, Coverage A provides coverage for "bodily injury and property damage liability" and imposes coverage limits of $1,000,000.00 per person, and $1,000,000.00 per occurrence, while Coverage B provides coverage for bodily injury and property damage liability resulting from a "products completed operations hazard," with limits of $100,000.00 per person and $1,000,000.00 per occurrence. (Doc. No. 21-2 at 5.)

The Policy also defines various terms used therein, including, in pertinent part, "covered premises" and "products-completed operations hazard" ("PCOH"). As it pertains to the definition of "covered premises," the Policy reads as follows:

Covered premises means:

    a.    The airport premises shown in the Declarations as "LOCATION OF AIRPORT INSURED BY THIS POLICY"; and

    b.    Any premises not owned, leased, rented or occupied by you, but which are used temporarily and incidental to your use of the airport; and

    c.    Any airport premises, or premises adjacent to an airport that you acquire ownership or control of during the Policy period, if:

        (1)    You notify us within 30 days after such acquisition;
        (2)    You pay any additional premiums due as a result of this additional premises; and
        (3)    You have no other valid and collectible insurance applicable to the loss.

(Doc. No. 21-2 at 32.) In regard to a products-completed operations hazard, or PCOH, the Policy states:

> Products-completed operations hazard:
>
> a. Includes all bodily injury and property damage occurring away from covered premises and arising out of your product or your work except:
>
> (1) Products that are still in your physical possession;
>
> (2) Work that has not yet been completed or abandoned. However, your work will be deemed completed at the earliest of the following times:
>
> (a) When all of the work called for in your contract has been completed;
>
> (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site;
>
> (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
>
> b. Does not include bodily injury or property damage arising out of:
>
> (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the loading or unloading of that vehicle by any insured; or
>
> (2) The existence of tools, uninstalled equipment or abandoned or unused materials

(Id. at 34.) The Policy also includes a declarations section (the "Declarations"), and Part 4 of the Declarations describes the term "LOCATION OF AIRPORT INSURED BY THIS POLICY" as

3

"Tipton, Ft Meade (Odenton), MD." (Id. at 5.)  Further, the Declaration pertaining to Coverage A lists "AIRPORT" and "BODILY INJURY AND PROPERTY DAMAGE LIABILITY" under the "Coverages" section, while the Declaration pertaining to Coverage B lists "PRODUCTS COMPLETED OPERATIONS HAZARD" and "BODILY INJURY AND PROPERTY DAMAGE LIABILITY." (Id.)

Prior to February 8, 2015, Claimants "took their airplane to [] Gorman to be repaired and/or serviced." (Doc. No. 21-1 ¶ 3.)  After picking up their airplane from Gorman, Claimants "attempted to take off in the plane from the Tipton Airport" on approximately February 8, 2015, yet during the takeoff, "the airplane suffered a power failure and crashed." (Id. ¶ 4.)  Both Claimants were injured in the crash. (Id. ¶ 7.)  While parties agree that the claims resulting from the crash are claims covered by the Policy, they dispute the amount of coverage applicable to the claims under the Policy (id.).  The parties do not dispute that the crash was caused by Gorman's repair or servicing of the airplane. (Id. ¶ 10.)

**B.    Procedural Background**

On May 18, 2017, USSIC initiated the above-captioned action by filing a complaint against Gorman, doing business as Tipton Aircraft Services, in this Court, seeking a declaratory judgment that "Coverage B, [n]ot Coverage A," under the Policy is applicable to Gorman's liability in relation to the crash. (Doc. No. 1.)  On May 9, 2017, USSIC filed an amended complaint for a declaratory judgment, which also named Claimants as defendants. (Doc. No. 6.) On August 8, 2017, Claimants filed an answer to the amended complaint and a counterclaim, in which they seek a declaratory judgment that the coverage limitations under Coverage A are applicable to the relevant insurance claims (Doc. No. 13), and USSIC filed an answer to the counterclaim on September 11, 2017 (Doc. No. 20).  In the fall of 2017, both Claimants and

USSIC filed motions for summary judgment (Doc. Nos. 21, 22), each of which is fully briefed and ripe for disposition.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs the grant of summary judgment. Parties may move for summary judgment on particular claims or defenses, or on a part of each claim or defense. Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. "Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (citation omitted).

In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The non-moving party cannot rest on mere pleadings or allegations," El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007), but "must set forth specific facts showing that there is a genuine issue for trial." Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). The Court "must view all evidence and draw all inferences in the light most favorable to the non-moving party" and will grant the motion only "if no reasonable juror could find for the non-movant." Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008).

The standard applicable to a motion for summary judgment "is no different where there are cross-motions for summary judgment." Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008). As explained by the United States Court of Appeals for the Third Circuit:

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one if rejected the other is necessarily justified or that the losing party waives judicial consideration and determination [of] whether genuine issues of material fact exist.

Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968) (citing F.A.R. Liquidating Corp. v. Brownell, 209 F.2d 375, 380 (3d Cir. 1954)).

Thus, a district court presented with cross-motions for summary judgment is instructed to evaluate the motions separately, "and view the evidence presented for each motion in the light most favorable to the nonmoving party." Borrell v. Bloomsburg Univ., 63 F. Supp. 3d 418, 433 (M.D. Pa. 2014) (citations omitted). "[E]ach movant must demonstrate that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the [C]ourt must deny [both] motions." Quarles v. Palakovich, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1023 (3d Cir. 2008)). "The standard for addressing cross-motions for summary judgment remains the same as if there were only one motion filed." Beneficial Mut. Sav. Bank v. Stewart Title Guar. Co., 36 F. Supp. 3d 537, 544 (E.D. Pa. 2014) (citing Lawrence v. City of Phila., 527 F.3d at 310). "When both parties move for summary judgment, '[t]he [C]ourt must rule on each party's motion on an individual separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Auto-Owners Ins. Co. v. Stevens & Ricci, Inc., 835 F.3d 388, 402 (3d Cir. 2016) (first alteration in original) (quoting 10A Charles Alan Wright, et al., Federal Practice & Procedure § 2720 (3d ed. 2016)).

## III. DISCUSSION

### A. Applicable Legal Standard[2]

"The rules of analysis of insurance policies in Pennsylvania are well established. The goal of interpreting an insurance policy, like that of interpreting any other contract, is to determine the intent of the parties." Firemen's Ins. Co. of Washington, D.C. v. Tray-Pak Corp., 130 F. Supp. 3d 973, 979-80 (E.D. Pa. 2015) (footnote omitted) (quoting Meyer v. CUNA Mut. Ins. Soc'y, 648 F.3d 154, 163 (3d Cir. 2011)). Under Pennsylvania law, "the interpretation of an insurance contract is a question of law." See Quality Stone Veneer, Inc. v. Selective Ins. Co. of Am., 229 F. Supp. 3d 351, 356 (E.D. Pa. 2017) (citing Kvaerner Metals Div. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006)). "In the context of insurance contracts, Pennsylvania courts have adopted 'the contra proferentem principle of interpretation" in that "ambiguities in policies are construed against the insurer." See Utica Mut. Ins. Co. v. Cincinnati Ins. Co., No. 18-cv-1646, 2019 WL 211287, at *4 (E.D. Pa. Jan. 15, 2019) (quoting Reliance Ins. Co. v. Moessner, 121 F. 3d 895, 905 (3d Cir. 1997)). "Under this principle, when a provision in an insurance policy is ambiguous, 'the policy is to be construed in favor of the insured . . . and against the insurer, as the insurer drafts the policy and controls the coverage." Id. (quoting Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007)).

"Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999) (quoting Hutchison v. Sunbeam Coal

---

[2] As the parties correctly note, Pennsylvania law governs the Court's interpretation of the Policy. See, e.g., Fry v. Phoenix Ins. Co., 54 F. Supp. 3d 354, 361 (E.D. Pa. 2014) ("When exercising diversity jurisdiction, a federal court sitting in Pennsylvania must predict how the Supreme Court of Pennsylvania would decide questions of state law.").

Co., 519 A.2d 385, 390 (Pa. 1986)). "This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." Id. (citing Gamble Farm Inn, Inc. v. Selective Ins. Co., 656 A.2d 142, 144 (Pa. Super. Ct. 1995); Techalloy Co., Inc. v. Reliance Ins. Co., 487 A.2d 820, 823 (Pa. Super. Ct. 1984)). A court may "consider extrinsic evidence to decide whether a contract is ambiguous." See Prudential Ins. Co. of Am. v. Prusky, 473 F. Supp. 2d 629, 637 (E.D. Pa. 2007) (citing Bethlehem Steel Corp. v. United States, 270 F.3d 135, 139 (3d Cir. 2001)). "Courts, however, should not read ambiguity into contracts." Selective Way Ins. v. Travelers Prop. Cas. Co. of Am., 724 F. Supp. 2d 520, 525 (E.D. Pa. 2010) (citing Madison Constr. Co., 735 A.2d at 106).

## B. Arguments of the Parties

Claimants argue that Coverage A is applicable to the insurance claims at issue in the instant action and, therefore, their motion for summary judgment should be granted. In support of their motion, Claimants argue primarily that because "[t]he occurrence took place on the covered premises, namely, the Tipton Airport, and arose [from] Mr. Gorman's use of those premises for the purposes of aircraft repair[,]" the occurrence "does not fall within the definition of PCOH, as it took place on, not away from, the covered premises." (Doc. No. 24 at 10.) According to Claimants, the occurrence giving rise to this litigation undisputedly "took place on the grounds of the Tipton Airport[,]" and the Policy defines "covered premises" as "[t]he airport premises shown in the Declarations" and labeled "Local of Airport Insured by this Policy," as well as "[a]ny premises not owned, leased, rented or occupied by you, but which are used temporarily and incidental to your use of the airport." (Id. at 11.) Claimants point to the Policy's definition of "Airport" as "the airport designed in Item 4 of the Declarations[,]" noting

8

that Item 4 refers to the Tipton Airport as the insured airport and, therefore, "under the plain terms of the Policy the 'covered premises' is the Tipton Airport in Odenton, Maryland." (Id.)

Further, Claimants rebuff USSIC's argument "that the 'covered premises' are restricted to the portion of the Tipton Airport occupied by its insured[,]'" stating that: (1) "there is absolutely nothing in the Policy language that restricts the definition of 'covered premises' to a mere portion of the airport[,]"[3] and (2) USSIC "ignores subsection (b.) of the definition of 'covered premises,' which provides that the covered premises include '[a]ny premises not owned, leased, rented or occupied by you, but which are used temporarily and incidental to your use of the airport.'" (Id. at 12) (third alteration in original) (quoting id., Ex. 1 at 9). According to Claimants, they, along with other customers of Gorman's, "used the premises of that airport to bring their aircraft to, and depart from, [Gorman's] repair service[,]" thus demonstrating temporary and incidental use of the premises for purposes of Gorman's business. (Id. at 13.)[4] In addition, Claimants assert that while "USSIC relies solely on the PCOH exclusion to argue that

---

[3] To that end, Claimants state that "USSIC is the drafter of this Policy and could have defined this term in a way that limited the 'covered premises' as 'the airport'" and, consequently, "USSIC must be bound by the plain language of the terms it chose to use in the Policy, and its argument fails based upon this language alone." (Doc. No. 24 at 12.)

[4] Additionally, Claimants argue that "USSIC has stated in another proceeding that a materially identical insurance policy extended coverage to the entire airport premises[,]" citing U.S. Specialty Insurance Company v. Bell Aircraft Sales and Service, Inc., 2:10-cv-14021 (S.D. Fla. 2010), and noting that, in that action, "USSIC specifically noted that the policy provided coverage to its insured" under Coverage A "and stated that 'the location of the airport insured by the [p]olicy' was 'the portion of the St. Lucie International Airport in Fort Pierce, Florida, occupied by' its insured." (Id. at 13) (citing U.S. Specialty Ins. Co. v. Bell Aircraft Sales & Serv., Inc., 2:10-cv-14021 (S.D. Fla. 2010)). According to Claimants, in that case, "USSIC contended that, because 'the subject Airplane crash did not occur within the covered premises under the [p]olicy, i.e., the St. Lucie International Airport,' but rather occurred after the aircraft had flown several miles away from that airport, Coverage A was inapplicable" and, therefore, "USSIC recognized that the airport itself was the covered premises, and explicitly argued that the occurrence at issue did not trigger coverage under Coverage A because it did not take place at the airport itself." (Id. at 14.)

9

Coverage A is inapplicable[,]" under the Policy, the "definition of 'products-completed operations hazard' . . . is limited solely to occurrences that take place 'away from' the covered premises." (Id. at 15.) According to Claimants, "the express definition of that term provides that a PCOH '[i]ncludes all bodily injury and property damage occurring away from covered premises and arising out of your product or your work'" and, as a result, "an occurrence that takes place on the covered premises is not a PCOH." (Id. at 15-16.)[5] In Claimants' view, because "the occurrence was causally connected to [] Gorman's 'use' of the covered premises as an aircraft repair shop[,]" it follows that "but for [Gorman's] use of the premises to perform aircraft service and repair, which he did in a negligent manner, the occurrence never would have taken place[,]" thus establishing that Gorman's "'use' of the covered premises for that purpose was causally related to the occurrence" (id. at 18) and, "[c]onsequently, there is no dispute that the occurrence falls within the express coverage provisions of Coverage A" (id. at 19).

Conversely, USSIC asserts that the Policy's clear and unambiguous language demonstrates that Coverage B, rather than Coverage A, applies in this instance. (Doc. No. 28 at 7.) In support of this point, USSIC maintains that "Claimants' proffered interpretation violates" fundamental rules governing a court's interpretation of an insurance contract provision. (Id. at 8-9) (citing case law supporting the proposition that "policy language must be construed in light of the context of the entire policy"). Further, USSIC states that Claimants are not entitled to

---

[5] In support of this proposition, Claimants assert that courts have consistently adopted such an interpretation, stating that "notably, another Court in the Third Circuit has recognized that differing policy limits between coverage 'for general and for products-completed operations hazard simply reflect [an insurance] policy's intent to bifurcate coverage between damages that occur on [the insured's] property versus damages that occur away from [the insured's] property." (Id. at 16) (internal quotation marks omitted) (alterations in original) (quoting Quality Stone Veneer, Inc. v. Selective Ins. Co. of Am., 229 F. Supp. 3d 351, 364 (E.D. Pa. 2017)). According to Cline in Barnett, in that case, the district court "expressly recognized that the on-premises/off-premises distinction is the quintessential hallmark of PCOH coverage." (Id.)

10

coverage under Coverage A because "Exclusion 22 to Coverage A precludes coverage for liability 'arising out of a [PCOH]'" and such an exclusion is inapplicable to the case at bar because "Claimants' plane must have been out of Gorman's possession and Gorman's work must have been completed[,]" both of which USSIC characterize as undisputed facts, noting that the incident "occurred after the plane had left Gorman's premises and had taken off, [] Gorman was not in the plane at the time[,]" and "at the time of the [c]rash, Gorman's work on the plane was completed." (Id. at 9-10.) According to USSIC, the "covered premises" under the Policy refer only to "the portion of the airport premises leased to Gorman[,]" and Claimants' proffered interpretation of the Policy "ignore[s] the actual language of the Policy – and the separate, different definitions of 'covered premises' and 'airport,'" and, rather, improperly equates the two terms with each other. (Id. at 12.) USSIC maintains that, therefore, "the 'covered premises' as defined in part a. [of the Policy] is the 'portion' of the 'Tipton, Ft. Meade (Odenton), Md' airport 'occupied by' Gorman (the named insured) as 'tenant'" and "are not the 'entirety' of the Tipton Airport as Claimants aver." (Id. at 13.) In a similar vein, USSIC states that "[i]f the term 'covered premises' included the entire airport, then there would be no need to use the separately defined term 'airport' in these instances." (Id. at 16.)[6] Additionally, USSIC states that the fact that "[n]o premiums were paid for insuring the entire 366 acres of the Tipton Airport" constitutes further evidence that the "covered premises" does not include the entire Tipton Airport. (Id. at 16-17.)

---

[6] In support of this point, USSIC maintains that "the Policy uses the term 'covered premises' in several other places where it is obvious that the Policy is referring to something less than the entire Tipton Airport," including, inter alia, portions of the Policy providing for "the Extension of Coverage to Include Personal and Advertising Injury Liability endorsement" and "the Extension of Coverage to Include Contracts Reporting Basis endorsement." (Doc. No. 28 at 16.)

11

## C. Whether Summary Judgment is Proper

The instant motions present the issue of whether the event giving rise to the claims occurred on the "covered premises" under the Policy, for the parties do not dispute that the airplane crash is a covered occurrence for purposes of the Policy, but, rather, disagree only as to whether Coverage A or Coverage B applies to Claimants' claims resulting from the crash. Upon review of the relevant evidence of record, undisputed facts, parties' arguments, and applicable law, the Court is persuaded that the crash occurred on a "covered premises" under the Policy, and, consequently, the exception to Coverage A for an occurrence that is a PCOH does not apply. Accordingly, the Court concludes that Coverage A applies to the claims at issue in this case and, therefore, summary judgment in favor of Claimants is warranted.

Claimants' proffered interpretation of "covered premises" governs the claims at issue in this case because the Policy's definition of "covered premises" is ambiguous and, consequently, must be construed against the drafter, USSIC. The Court is mindful of its obligation not to "distort the meaning of the [Policy's] language or strain to find an ambiguity";[7] however, the Court is not required to do so in this case because both parties have articulated reasonable interpretations of the definition of "covered premises," in that Claimants assert that the definition applies to the entirety of the Tipton Airport (Doc. No. 24 at 10), while USSIC maintains that the definition applies only to the portion of the Tipton Airport leased by Gorman as the insured (Doc. No. 23 at 18). The Court, therefore, is obligated to examine the interaction of these provisions in determining whether an ambiguity is present. See Halpin v. LaSalle Univ., 639 A.2d 37, 39 (Pa. Super. Ct. 1994) ("When determining whether a contract is ambiguous, a court

---

[7] See Westfield Ins. Co. v. Rustic Exteriors, Inc., No. 11-cv-6011, 2013 WL 12146532, at *7 n.10 (citing Steuart v. McChesney, 444 A.2d 659, 663 (Pa. 1982)).

must view the contract as a whole and not in discrete units."). Having found both parties' respective interpretations of "covered premises" to be reasonable, the Court concludes that the Policy's definition is ambiguous. See, e.g., Madison Constr. Co., 735 A.2d at 606 (providing that "contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts").

Based the conclusion reached supra, the Court must construe the definition of "covered premises" against USSIC, the insurer and adopt the interpretation advocated by Claimants. See, e.g., Reliance Ins. Co., 121 F.3d at 900-01 ("Where a provision of a policy is ambiguous, the provision should be construed in favor of the insured and against the insurer, the drafter of the agreement." (citing Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983))). Such a construction is especially appropriate in this case, as the Court agrees with Claimants that in order to adopt USSIC's proffered interpretation of "covered premises," the Court would have to ignore both that "(1) the definition of 'covered premises' refers only to the box labeled 'LOCATION OF AIRPORT INSURED BY THIS POLICY;' and (2) the definition of 'airport' refers only to 'the airport designated in Item 4 of the Declarations.'" (Doc. No. 29 at 4.) Because USSIC, as the drafter of the Policy, could have limited the definition of "covered premises" to the portion of the Tipton Airport specifically leased and occupied by Gorman (id. at 5), the Court must construe the definition of "covered premises" against USSIC. See Firemen's Ins. Co., 130 F. Supp. 3d at 980 (providing that an ambiguous provision in an insurance contract must be construed against the insurer).

## IV. CONCLUSION

Based on the foregoing, the Court will grant Claimants' motion for summary judgment (Doc. No. 21), and deny USSIC's motion for summary judgment (Doc. No. 22). An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania